UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-22616-CIV-SEITZ/O'SULLIVAN

JERRY POWERS,

        Plaintiff,

v.

NICHE MEDIA HOLDINGS, LLC,

        Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER came before the Court on Plaintiff's Motion for Preliminary Injunction [DE-3] and Defendant's Motion to Dismiss [DE-7]. The Court held a hearing on the Motions on October 20, 2009. After hearing arguments of counsel and based on the moving papers, Plaintiff's Motion for Preliminary Injunction should be denied and Defendant's Motion to Dismiss should be granted as to Counts I, II, and IV of the Complaint.

Background Facts

Plaintiff and Defendant are in the process of a "business divorce." Plaintiff founded the magazine *Ocean Drive*. *Ocean Drive* was owned by Ocean Drive Media Group (ODMG), of which Plaintiff was a shareholder. On November 1, 2007, ODMG closed on the sale of its assets to Defendant pursuant to an Asset Purchase Agreement (APA).[1] The APA contained non-compete and non-solicitation clauses. The non-compete provision states, in pertinent part, that "each Principal agrees that, during the two-year period following the Closing Date (the

---

[1] Plaintiff and his wife, as principals and shareholders of ODMG, received $30,000,000 for the sale of ODMG's assets.

"Noncompete Period"), he or she shall not . . . participate in the Business anywhere in the United States . . ." APA, ¶ 8.10(a). The term "Business" is defined in the APA as the "luxury magazine publication business." APA, Article XI & Recital 1. The non-solicitation provision states "During the Noncompete Period, each Principal shall not, directly or indirectly . . . (ii) induce or attempt to induce any customer or supplier of Buyer or Seller to cease doing business with Buyer or Seller . . ." APA, ¶ 8.10(b).

In conjunction with the APA, Plaintiff entered into an Employment Agreement with Defendant on November 1, 2007.[2] The Employment Agreement contained a Restrictive Covenant which provided that in consideration for the agreement to employ Plaintiff and other valuable consideration under the agreement, Plaintiff shall not

> (a)   either directly or indirectly . . . canvass, contact, solicit or accept business from any customer of the Company . . . except if such canvassing, contacting, solicitation or acceptance of business relates to business ventured or opportunities which do not constitute a Competing Business . . .
>
> (b)   accept with a Competing Business a position including but not limited to a position as an employee, consultant or independent contractor.
>
> (c)   accept any position or affiliation . . . with a Competing Business . . . or otherwise use Confidential Information . . . obtained, or acquired during, or as a consequence of, his employment with the Company;
>
> (d)   solicit . . . any employee or . . . prospective employees of the Company to terminate and/or leave the employment of the Company . . .

Employment Agreement, ¶ 9. A "Competing Business" is defined as "a person or entity that is engaged . . . in any business which is the same or essentially the same as the Company's Business

---

[2]Under the terms of the Employment Agreement, Plaintiff was paid a salary of $725,000 a year plus a bonus of up to $300,000. On January 1, 2009, the salary was increased 4% automatically.

. . . including but not limited to publishing or distributing a regional, city, or controlled circulation publication." Employment Agreement, ¶ 12.4. The Restrictive Covenant had a restriction period of 24-months from the termination of Plaintiff's employment during the initial five-year term of employment. The Employment Agreement definition of "Restrictive Period" stated:

> To the extent there are any inconsistencies during the first two (2) years of this Agreement with the corresponding provisions of the Asset Purchase Agreement, the Restrictive Covenants related to Non Competition and Non Solicitation under the Asset Purchase Agreement shall be controlling.

Employment Agreement, ¶ 12.6.

Plaintiff's employment with Defendant terminated on February 17, 2009 pursuant to a Severance Agreement, which has been filed under seal. The Severance Agreement states that Plaintiff "will be required to comply with" the restrictive covenants in the Employment Agreement and with paragraph 12.6 of the Employment Agreement. At the time of termination, a Release of Claims was also executed. It has not been filed with the Court.

In spring 2009, Plaintiff volunteered himself and his staff to work with a group of teens at the Overtown Youth Center on an eight week summer project. Plaintiff agreed to mentor them in producing a not-for-profit, inner-city teen magazine for the Youth Center (the Project). The Project generated substantial publicity in the local and national media. While working on the Project, Plaintiff and his staff assisted the teens in soliciting twenty-five advertisers, some of whom were customers of Defendant. The total amount from ads sold for the Project was approximately $10,000. The Project was to be published in September 2009, under the name IE2 or Inspire, Enrich and Empower.

According to the Complaint, Defendant contacted individuals involved in the Project and stated that Plaintiff's involvement was a violation of his non-compete and non-solicitation agreements. Publication of the Project was put on hold due to Defendant's alleged threat of legal action against Plaintiff. Thereafter, Plaintiff filed a four count verified complaint. Count I seeks a declaratory judgment that Plaintiff's involvement in the Project did not violate his non-compete and non-solicitation agreements. Count II seeks preliminary injunction allowing publication of the Project. Count III seeks a declaratory judgment regarding the expiration of the non-compete and non-solicitation provisions and Count IV seeks Injunctive Relief regarding the expiration of the non-compete and non-solicitation provisions.

Plaintiff filed an Emergency Motion for Preliminary Injunction. The Court denied the emergency nature of the motion. Thereafter, Defendant filed a Motion to Dismiss. The Court heard arguments on both motions at the October 20, 2009 hearing.

<u>Motion to Dismiss</u>

Defendant moves to dismiss Counts I and II based on mootness, lack of case or controversy, and Plaintiff's lack of standing. Defendant also moves to dismiss Count IV as it does not allege an injury and moves to dismiss or transfer the case because the remaining claim, Count III, is based on provisions of the APA which contains a venue provision, paragraph 10.7, stating that any state or federal court in the state of Nevada shall have "exclusive jurisdiction" over any dispute arising out of the agreements, other than the Employment Agreement. However, the Employment Agreement and the Severance Agreement have venue provisions naming federal or state courts in Miami-Dade County, Florida.

*Count I*

Count I of the Complaint seeks a declaration that Plaintiff's involvement in the Project did not violate the non-compete and non-solicitation provisions of the contracts. Defendant briefly asserts that declaratory judgment is not proper at this time because Plaintiff has already done whatever he did in relation to the Project. Thus, the appropriate time to resolve this issue would be if and when Defendant brings an action against Plaintiff for violations of the contractual provisions. Plaintiff contends that the Court can still grant Plaintiff meaningful relief because Plaintiff is still involved in the Project, may wish to get involved with other similar charitable activities, and, if his Project involvement did breach the restrictive covenants, under the APA the covenants would be extended.

The Declaratory Judgment statute allows a party to seek a declaration of the legal rights and relations of the parties if there is an "actual controversy." 28 U.S.C. § 2201. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999). Further, "[t]here must be a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough." *Id.* at 1347.

It is not certain what future injury Plaintiff will suffer as a result of his past involvement in the Project. Plaintiff's claim that he may get involved in future similar projects is too speculative to constitute a future injury; it is a perhaps or a maybe. Plaintiff's argument that he is

still involved in the Project also does not lead to a future injury because based on the allegations in the Complaint, the Project was publication-ready. Therefore, any future involvement by Plaintiff would be extremely limited. Finally, if Plaintiff did breach the restrictive covenants thereby extending their length, that is an already incurred injury, not a future injury. Consequently, Count I of the Complaint fails to state a claim for declaratory relief and should be dismissed.

*Count II*

Count II of the Complaint seeks a preliminary injunction to allow publication of the Project. In his response to the Motion to Dismiss, Plaintiff concedes that Count II is moot based on Defendant's representations in its Motion that it will not prevent publication of the Project and, in fact, the publication took place earlier this month. Accordingly, Count II must be dismissed.

*Count III*

Count III of the Complaint seeks a declaratory judgment as to when the non-compete and non-solicitation provisions expire under the APA and the Employment Agreement. Plaintiff believes that they expire on November 1, 2009, as per the APA, and alleges that he plans to reenter the luxury magazine publishing business at that time. Defendant's Motion to Dismiss Count III does not attack the sufficiency of the allegations to state a claim for declaratory relief, but instead Defendant argues that, if the November 1 date is correct, the APA controls and thus venue for this claim is only appropriate in Nevada under the APA's exclusive jurisdiction clause. Plaintiff responds that the real dispute is over the interpretation of paragraph 12.6 in the

Employment Agreement and that agreement contains a forum selection clause of Miami-Dade County. Additionally, the Severance Agreement also names Miami-Dade County as the appropriate forum.

While generally, forum selection clauses are enforceable, *P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 84, 807 (11th Cir. 2003), the APA is not the operative agreement in this case. The dispute over the duration of the restrictive covenants is a dispute arising out of the Severance and Employment Agreements, not the APA, because it is the language in the Employment Agreement over which there is a dispute – the clause regarding inconsistencies between the Employment Agreement and the APA. This clause, paragraph 12.6, quoted above, states that where there are inconsistencies between the two agreements, the restrictive covenants in the APA will control. It is how this language is interpreted that will decide the outcome of Plaintiff's claim. Therefore, the Southern District of Florida is an appropriate forum and Count III should not be dismissed or transferred to Nevada.

*Count IV*

Count IV of the Complaint is labeled "Injunctive Relief re: Expiration of Non-Competition and Non-Solicitation Provisions." However, in the relief requested section, it appears that Plaintiff does not request injunctive relief on this issue. Thus, it is not entirely clear what this claim really is seeking. Defendant asserts that this claim should be dismissed because Plaintiff has alleged no injury and no connection between an injury to Plaintiff and Defendant's conduct.

Plaintiff argues that he faces imminent injury because Defendant plans to sue him come

November 1, 2009. Plaintiff further argues that he will suffer irreparable harm in his ability to earn a living if relief is not granted because Plaintiff would likely start up a new business and thus damages would be speculative. Therefore, there is an inadequate remedy at law for Plaintiff. Plaintiff implicitly agrees that the Complaint does not contain a request for relief under this count but states that the Motion for Preliminary Injunction does seek relief under this count.

Neither party addresses the issue that there is no such thing as a claim for injunctive relief. *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005). An injunction is a remedy. A claim seeking injunctive relief "must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance" that can withstand scrutiny under Federal Rule of Civil Procedure 12(b)(6). *Id.* Thus, Count IV cannot stand on its own as it fails to state a claim. Further, as noted by Defendant, Plaintiff's Complaint does not actually state that it seeks such a remedy. Because Count IV fails to state a cause of action, it must be dismissed pursuant to Rule 12(b)(6).

<u>Motion for Preliminary Injunction</u>

The Motion for Preliminary Injunction seeks an injunction that enjoins Defendant "from actions that delay or inhibit the planned September 8, 2009 publication" of the Project and preventing Defendant "from enforcing the non-competition and son-solicitation clauses beyond November 1, 2009." As noted above, the issues regarding publication of the Project are now moot. Therefore, the only issue for consideration is whether Plaintiff is entitled to a preliminary injunction preventing Defendant "from enforcing the non-competition and son-solicitation clauses beyond November 1, 2009."

Defendant opposes issuance of a preliminary injunction on the grounds that a declaratory action is the appropriate remedy. Further, Defendant argues that because Plaintiff states that the APA is the controlling document, this matter should be litigated in Nevada pursuant to the forum selection clause in the APA. However, as set out above, the real issue is interpretation of clause 12.6 in the Employment Agreement. Defendant also argues that this issue is not yet ripe for adjudication as demonstrated by Plaintiff's inability to demonstrate a link between Defendant's actions and an injury to Plaintiff.

A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant, here the Plaintiff, clearly establishes the four prerequisites. *Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). The Eleventh Circuit has set out the following standard for issuance of a preliminary injunction:

> To justify a preliminary injunction, the plaintiff must plainly establish four preconditions: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be disserved by grant of a preliminary injunction. *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir.1987); *Johnson v. United States Dep't of Agric.*, 734 F.2d 774, 781 (11th Cir.1984).

*Northeeastern Florida*, 896 F.2d at 1284-85. Further, the function of a preliminary injunction is to preserve the status quo until the merits of the case can be adjudicated. *Id.* at 1284. Plaintiff in this case has not met his heavy burden because he has not demonstrated a substantial likelihood of success on the merits and has not established that he will suffer irreparable harm in the absence of a preliminary injunction. Moreover, granting Plaintiff a preliminary injunction would

not preserve the status quo; it would upset it.

### 1. *Substantial Likelihood of Success on the Merits*

Plaintiff asserts that he has a substantial likelihood of success on the merits because the language of paragraph 12.6 of the Employment Agreement clearly provides that his non-competition obligations expire on November 1, 2009. He argues the time durations of the restrictive covenants contained in the APA and in the Employment Agreement are inconsistent and thus, under the terms of the Employment Agreement paragraph 12.6, the November 1, 2009 deadline in the APA's restrictive covenants controls.

Defendant argues that Plaintiff cannot succeed on the merits because the language in the Employment Agreement is not inconsistent with the language in the APA. Defendant asserts that the language in the Employment Agreement regarding inconsistencies applies only to the substance of the restrictive covenants, not their duration, and that the clauses are not actually inconsistent, just different, because the restrictions in the APA are broader than the restrictions in the Employment Agreement. Thus, Defendant maintains that Plaintiff is restricted by the APA's broader terms until November 1, 2009 but by the narrower terms of the Employment Agreement until February 17, 2011. Plaintiff also argues that to interpret the two agreements as Plaintiff suggests would result in an absurd result.

A contract clause is ambiguous if it is susceptible to two alternative interpretations that are reasonably inferred from the terms of the contract. *Commercial Capital Resources, LLC v. Giovannetti*, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007) (holding that a settlement agreement was ambiguous because it was susceptible to more than one reasonable interpretation); *see also*

*Friedman v. Virginia Metal Products Corp.*, 56 So. 2d 515, 517 (Fla. 1952) (stating the general rule that a "word or phrase in a contract is 'ambiguous' only when it is of uncertain meaning, and may be fairly understood in more ways than one"). The contract clause at issue here is ambiguous. Both parties have presented reasonable interpretations of paragraph 12.6 of the Employment Agreement. Furthermore, "[i]f one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability." *Arawak Aviation, Inc. v. Indemnity Ins. Co. of North America*, 285 F.3d 954, 957 (11th Cir. 2002) (quoting *Inter-Ocean Cas. Co. v. Hunt*, 189 So. 240, 242-43 (Fla. 1939)). Plaintiff's proffered interpretation, when read in conjunction with all of the agreements, especially the importance of the restrictive covenants as provided in paragraph 11 of the Employment Agreement, appears to lead to an absurd result. Thus, given this ambiguity, Plaintiff has failed to establish that he has a substantial likelihood of success on the merits.

2. *Irreparable Harm*

Plaintiff asserts that a delay in his ability to reenter the publishing business will cause harm that cannot be quantified. Because he is 62 years old, a delay will make him irrelevant and will weaken any contacts he has in the industry. Plaintiff also argues that determining his monetary damages will be difficult and thus he has no adequate remedy at law. Defendant counters that this is not irreparable harm because it is speculative and is, at best, only future harm, which will not occur until after November 1, 2009. Further, Defendant argues that it will suffer irreparable harm if Plaintiff is allowed to solicit Defendant's employees, customers, and

11

advertisers prior to the February 2011 expiration of the restrictive covenants. Defendant points to paragraph 11 of the Employment Agreement, where the parties agreed that if Plaintiff violates the restrictive covenants, Defendant would be irreparably harmed and would be entitled to seek injunctive relief. Thus, the parties recognized that a breach of the restrictive covenants would cause irreparable harm to Defendant. Notably missing from the agreements is any recognition that Plaintiff could be irreparably harmed by Defendant's attempts to enforce the restrictive covenants.

Consequently, Plaintiff has not clearly established that he will suffer irreparable harm if a preliminary injunction is not entered. Plaintiff has merely made unsupported assertions about his potential damages. This does not meet his burden of persuasion required for the extraordinary remedy of an issuance of a preliminary injunction.

### 3. Injury to Plaintiff Outweighs Injury to Defendant

Plaintiff argues that Defendant will suffer no harm from the issuance of an injunction that prevents the enforcement of the restrictive covenants beyond November 1, 2009 because that was the date agreed to by both parties. However, if the restrictive covenants do not expire on November 1, 2009, Defendant will suffer irreparable injury because it will lose the benefit of its bargained for restrictive covenants, a result recognized by the parties' inclusion of paragraph 11 in the Employment Agreement. Thus, Plaintiff has not met the burden of establishing that the harm to him outweighs any injury to Defendant.

### 4. Public Interest

Plaintiff asserts that public policy favors reasonable restrictive covenants. Plaintiff also

argues that preventing Plaintiff from returning to work also implicates Plaintiff's freedom of speech. On the other hand, public policy also favors enforcing contracts between parties. Thus, Plaintiff has not met his burden of persuasion to establish that the public interest favors the issuance of a preliminary injunction in this case.

Because the Plaintiff has not clearly satisfied all of the requirements for the entry of a preliminary injunction, his motion must be denied. Accordingly, it is

ORDERED that:

1. Defendant's Motion to Dismiss [DE-7] is GRANTED in part:

   a. Counts I, II, and IV are DISMISSED.

   b. The Motion to Dismiss is DENIED in all other respects.

2. Plaintiff's Motion for Preliminary Injunction [DE-3] is DENIED.

DONE AND ORDERED in Miami, Florida, this 23rd day of October, 2009.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record